## IN THE UNITED STATES DISTRICT COURT

FOR THE ~~EASTERN~~ DISTRICT OF ~~WISCONSIN~~ Kansas

AT ~~MILWAUKEE~~ Kansas City

| | | |
|---|---|---|
| In Re, Wing Nuen Liu | ) | **Case No:** 25-3036-JWL |
| | ) | _____ |
| Petitioner, | ) | |
| | ) | **PETITION FOR WRIT OF HABEAS** |
| On Habeas Corpus | ) | **CORPUS UNDER 20 U.S.C. §2241** |
| _____ | ) | |

**Memorandum of points and Authorities in support of petitioner for writ of Habeas Corpus pursuant to 28 U.S.C. §2241**

### Introduction

**Petitioner, Wing N Liu**, hereinafter (petitioner) or **(Liu),** appearing pro se, hereby petitions this honorable court for a writ of habeas corpus and seeks declaratory and injunctive relief to review the lawfulness of his detention by the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE) and its Contract Agents.

Petitioner Request this honorable court to review his pleading under the mandates of **Haines v. Kerner**, 404 US 519, 520 (1972) (pro-Se complaint held to less stringent standard that formal papers drafted by lawyers).  In support of this petition and complaint, petitioner's alleges are as follow:

1 of 40



IN THE UNITED STATES DISTRICT COURT
FOR THE ~~EASTERN~~ DISTRICT OF ~~WISCONSIN~~ Kansas
AT ~~MILWAUKEE~~ Kansas City

FILED
MAR 03 2025
Clerk, U.S. District Court
By: _____ Deputy Clerk

Wing Nuen Liu

(Pro-se petitioner)

V.                25-3036-JWL

C. Carter, warden
~~Jason Benton, Captain~~ and jail Administrator
Of ~~Kenosha County Detention~~ ~~Facility~~ Leaven Worth F.C.I.

(Respondent)

Robert Guadian, US. ICE Field office Director for the Chicago Field Office,

Kristi Noem, Secretary of the Department of Homeland Security,

Pamela Bondi, the Attorney General of United States

(Real Parties in Interest)

Petition for writ Of Habeas Corpus under 28 U.S.C. §2241

2 of 40

# Grounds for relief

Ground One – Procedural Due Process Violation.

Ground two – Arbitrary Enforcement (Substantive Due Process Violation).

Ground Three – Petitioner Not subject to mandatory detention.

Ground Fourth – Statute No Longer Applies.

Ground Fifth – Statutory Violation.

Ground Sixth – It has been 28 years since the Final Order of removal, Respondents has not Come up with any evidence to indicate petitioner's removal are foreseeable.

Ground Seventh – Detention in violation of INA and interim Regulations 66 Fed. Reg. 56967.

Ground Eighth – Petitioner is not a Flight risk.

Ground Ninth – Public Interest.

## Custody

Petitioner is in the physical custody of ~~Columbia Country Correctional~~ Federal Correctional Institution located in ~~Oregan, Wisconsin~~ Leavenworth, Kansas which it has a contract with the Department Of Homeland Security Bureau of Immigration and Customs Enforcement (ICE) to house petitioner is under direct controls of his respondents and their agents.

## Parties

Petitioner Liu is a native of the people's Republic of China. He first entered United States with inspection in 1988, he is 51 years of ages now, and has been living in the United States with his families for the past 37 years. He has two teenage daughters, both born in US.

Respondent ~~Stove Smith~~ C. Carter is the ~~captain~~ warden and jail Administrator for ~~Dodge~~ Leaven Worth F.C.I ~~Detention Center~~ where petitioner is currently being detained under the authority of ICE. ~~He/Smith~~ Ms. Carter is petitioner's legal custodian.

Respondent **Robert Guadian** is the senior executive service (SES) field officer director (FOD) for the Chicago field office, which oversees 13 offices throughout six states. Including Illinois, Wisconsin, Indiana... he is petitioner immediate custodian. Please see **Vasquez v. Reno** 233 F.3d 688.690 (1st Cir. 2000). (describing the then INS New Orleans District Director as the Individual with "day to day control" over an alien detained at the federal Detention Center Oakdale, Louisiana).

Respondent **Kristi Noem** has been the Secretary of Department of Homeland Security, she is responsible for the administration of ICE and the implementation and enforcement of the INA. As such **Kristi Noem** is also a custodian of the petitioner.

Respondent **Pamela Bondi**, has been the Attorney General of the United States, since February 5th of 2025, She is responsible for the administration of ICE and the implementation and enforcement of the immigration and Nationality Act (INA). As such, **Ms. Bondi** has ultimate custodial authority over petitioner.

## **JURISTICTION**

This habeas action arises under the constitution of the United States, and the immigration and Nationality Act (INA). 8 U.S.C 1101 et seq., as amended by the Illegal Immigration Responsibility Act of 1996 (IRRIRA). Pub. L. No. 104-208, 101 State 1570 and the Administrative Procedure Act (APA). 5U.S.C. 701 et. Seq.

Petitioner is currently being held unlawfully against his will by the respondents under color authority of the United States. Such custody is in direct violation of our constitution, laws, or treaties of United States.

This court has jurisdiction and may grant relief under 28 U.S.C. §2241, per Article one, Section 9 of the United States Constitutions (suspension clause).

Please see **Zadvydas v. Davis** U.S. 678 (2001) ("We conclude that §2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post removal detention.").

Please also see **INS v. St. Cyr** 533 U.S. 289. 301 (2001) ("at its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest.")

## VENUE

Pursuant to **Braden v. 30th Judicial Circuit Court of Kentucky**, 410 U.S. 484. 493-500 (1973). The venue in this petition lies in the United States District Court for the Eastern District of Wisconsin the Judicial district in witch petitioner is currently being detained at Dodge County Detention Center Juneau Wisconsin.

Furthermore, According to **28 U.S.C § 1406** (a). "[t]he district court of a district in which is filed, a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice transfer such case to any district or division in which it could have been brought."

There for, if the venue in this petition is not field in the right venue, petitioner Liu plead for this court to transfer this petition to the right venue, under **All state life Ins. Co. V. Stanley W. Burns, Inc.,** 80. F.Supp. 3d 870, 881 (N.D. ILL. 2015) "Courts in this district have (Broad discretion) to order a transfer of a case" (Citing **Continental Ins. C.V. M/V Orsula** 354 F.3d 603, 608 (7th Cir 2003)

## Relevant Facts and Analysis

Petitioner enter the United States with his parents in 1988. Since then petitioner has raised a family of his own, and he has been living in the United States for the past 37 years. He has two teenage daughters who are 15 and 16, both born in the US. Petitioner is now 51 years of age.

Petitioner's trouble started in 1992 when he was still a teenager in high school. He got into a heated argument with an individual, the other individual has a gun and petitioner and this individual was fighting over the gun, and ended up causing the death of that individual, and served 13 years in IDOC

An immigration judge order the petitioner be deported and removed on May 8, 1996. Petitioner appealed that order but it was dismissed by the (BIA).

Petitioner's order of removal became administratively final on March 12, 1997, and was placed in removal proceedings.

On or about October 2005, ICE picked up petitioner after he finished serving his prison sentence, removal to China was initiated. However, a letter from the Consulate General of the people's Republic of China in Chicago, dated August 9th 2006 in reference to request of travel documents that the Consulate General of China has no ground to favor petitioner's deportation. Therefore, after more than (9 months) of ICE detention, petitioner was finally release from custody and place under an order of supervision due to the fact that his removal to China is not foreseeable.

On or about October 2006 to about October 2009, petitioner was under supervised release and was reporting to ICE's location in Chicago when he was needed. Petitioner did not miss any schedule reporting, and was always on time.

On or about 2010, petitioner's car was broken down and needed a lift. He asked his friend for a ride. During the ride, the car was pulled over by CPD. A gun was recovered under the driver seat, even though petitioner was seating behind the driver, but because petitioner was a Felon, cannot be around any guns at all, and because the gun was in arm's reach, even though it didn't belong to him, but still got charged with "Constructive Possession" of a gun by a Felon. Petitioner took his attorney's advice and pleaded guilty to charge in exchange for a shorter sentence.

After he completed his prison sentence on August 9th, 2011, ICE was waiting at the front gate to pick up petitioner once again for removal. In 2011 it would have been 14 years since petitioner's order of removal became final from 1997.

After being held in Ice Detention again with no progress, and after countless request to ICE agents for inquiries of his freedom but no responses, petitioner took matters into his own hands. On February 7th, 2012, after being held for 6 months in detention, petitioner Liu filed a habeas corpus petition in the United States District Court, Northern District of Alabama. The action was styled **Liu v. Hassell, et al; assigned Case Docket Number 4: 12-cv-0392-JHH-PWG** and it was heard in front of Chief Magistrate judge the honorable Paul W. Greene.

Not long after, petitioner was released because of his removal to China is not foreseeable, and he is not a flight risk nor is he a danger to the community

Petitioner's home address is on file, and petitioner has been reporting to his ICE Agent from the day he got released, From February 2012 to 2018, all report dates are documented with ICE Agent's signatures.

After his released, on the road to pursuing happiness and a better life for himself and his family, petitioner was under arrest, because he didn't have a license to distribute marijuana, and was doing so without one and was not paying income tax like the rest of the licensed marijuana distributors does. And after he completed his prison term, he again was picked up by ICE agents at the front gate.

The department of justice issued regulations governing the custody of alien's order removed. See continued detention of Aliens subject to Final Order of Removal. 66 Fed. Reg. 56, 967 (2001) (codified at 8 C.F.R. Pts. 3 and 41).

The United States Supreme Court issued its decision regarding to the statute with **Zadvydas v. Davis,** the court held "we conclude that once removal is no longer reasonably foreseeable, continued detention is no longer authorize by the statute."  See **1E. Coke Institutes** *70b ("cessante ratione legis cessat ipse lex") (the rationale of a legal rule no longer being applicable, that rule itself no longer applies). 533 U.S. 678 at 699 (2001).

On August 2nd, 2023, because of the large risk of losing his freedom yet again for another 6 months or more, petitioner wrote a letter requesting to be released on supervision to ICE removal operation in Los Angeles, the District which is responsible for the detention of petitioner Liu at the time, petitioner explained to ICE agent that it was determined that his removal to China is not foreseeable, and he is not a danger to the community nor is he a flight

risk. Petitioner also enclose a letter from China's Embassy, which was address to Headquarters Case Management Until in Washington D.C. statin that petitioner's travel documents was denied. Petitioner also enclosed a copy of his reporting history. ICE did not respond to petitioner's request for release at the time.

Moreover, Petitioner send a Certified mail to ICE head quarter in Washington D.C requesting Supervision release, after exhausted all available remedies, petitioner filed a Habeas Corpus 2241 in the District Court, under the case Wing Nuen Liu V. Bruce Scott, et al., No. 2:23-cv-01654-JHC-GJL in U.S District Court, W.D. Washington Seattle. Jan 26, 2024 under the honorable District Judge John H Chun. Petitioner was released after the Habeas Corpus petition.

Petitioner was released, and place on GPS ankle monitor by ICE, petitioner's where about is being monitor 24/7.

Petitioner started a LLC Pet food delivery company, its register with the Secretary State of Illinois also got Federal Income Tax ID to pay his Federal Income Tax.

Petitioner been on Federal probation, been reporting to:

Jennifer Justice

U.S Probation Officer
801 Warrenville Road
Suite 75
Lisle, IL phone # (312) 480-5897

and gave Ms. Justice all the information pertaining to his business, also Federal District Judge Wood, is also inform of his business also, and was instruct by the Honorable Judge Wood that to show documents of petitioner's delivery receipt to probation officer Ms. Justice.

Petitioner has been in probation with the Federal Government and been on GPS ankle monitor with ICE over a year.

However, on January 22nd of 2025, a Wednesday morning in a Home Depot parking lot, petitioner was in his friend's car and was sound rounded by ICE Agents, got pull out of his friend's car, and told that his "Supervision Released" is revoked, when asking why, petitioner was told that the day they asked petitioner to come in, he never come in and that he was at the vet.

Well, Petitioner told the arresting ICE Agents, that it must have been a mistake, because he did remember that day, petitioner was at the "Midwest animal hospital" in Orland Park, he received a call, was told to go in due to the ankle monitor malfunction, and petitioner did went in that day, to 101 Ida B Wells Chicago Illinois, between the time of 3pm and 5pm. Petitioner did signed in, and was greed by an officer, and he cut off petitioners ankle monitor, replace the old band with a new band, petitioner also asked this ICE Agent does this visit count as a report day, ICE Agent said yes, and petitioner left.

On the same day during the time petitioner was in the building, he received a parking ticket due to his truck's front license plate was on front window instead of the front bumper.

Petitioner told all of this to the arresting officers, all he was told was that they will clear the mistakes once they get back to the office.

11 of 40

## EXHAUSTION OF REMEDIES

Today is 2/07/2025, Petitioner has been detained for more than two weeks in Dodge county detention center, Petitioner has wrote / Fax request to ICE demanding answers, asking why his supervision release was revoke, and why his freedom was taking from him when he has done nothing wrong, **(please see Exhibit)** the only answer from ICE **(please see Exhibit)** was that petitioner was ordered being deported back in 1996, and that if ICE doesn't remove him with in the 90 days removal period, his review day its April 22nd 2025, But give no reason to why petitioner's supervise release was revoked, and freedom was taken from him.

## Supporting Cases and Grounds for Relief

## Ground One

## Procedural Due Process Violation

## DECLARATION OF INDEPENDENCE

"All men…. Are endowed by their creator with certain <u>unalienable right</u>" one of those rights is "The right of liberty" and the 4th, 5th, and 14th Amendments of our Constitution promises and guarantee this <u>rights</u> to any person under the colors of red, white, and blue. As long as the individuals set their foot on the United States' soil, they are entitled to these guarantees that's offered from the constitution of the United States.

One of the many guarantees is from the 5th Amendment of the Constitution where it states in part:

"….no person shall be deprived

Of life, liberty, or property,

Without due process of law."

As the Supreme Court "has always recognized", "no right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraints or interference of others, unless by clear and unquestionable authority of law." **Union Pac. R. Co. V. Botsford** 141 U.S. 250, 251, 11, S, Ct. 1000. 35 L.Ed 734 (1891).

In order to justify petitioner's detention and his freedom being taken, due process of law would command the **respondents** to show (why) petitioner's supervision release revocation is Justify, and that his removal to China is foreseeable per **Zadvydas V. Davis,** however, as of today, respondents cannot produce any.

The 5th Amendment requires that, before depriving a person of his/her liberty, the government must allow that person to be heard at a meaningful time and in a meaningful manner. **Mathews v. Eldridge**. 424 U.S. 319. 334 (1976). The determination of whether particular government conduct violate this procedural due process balances (1) The private interest affected by the official action; (2) The risk of erroneous deprivation of the interest and value (if any) of additional or substitute procedural safeguards; and (3) The government's interest, including the burden that additional or substitute procedural requirements would impose. Id. At 335. To conform to the requirements of due process. Such a hearing must take

Place before an independent and impartial adjudicator. Id. At 334-35. A determination by ICE District Director to detain an Alien indefinitely pending removal is insufficient to satisfy due process. See **Ekehor v. Aljets** 979 F. sup. 640. 644 (N.D. ILL. 1997).

Petitioner has fundamental interest in freedom from deprivation of his liberty without first being afforded procedural due process protection.

**Without an answer or a hearing to show justifiable, Due process to seize petitioner's liberty cannot be satisfied in that manner!**

Even if the respondents can justify revoking petitioner's supervise release, they would still have to overcome supreme court's ruling in **Zadvydas v. Davis** (Ground Two of this petition).

<u>**Ground Two**</u>

**Arbitrary Enforcement**

**Substantive Due Process**

**Violation**

In **Zadvydas v. Davis**, the supreme court held **8 U.S.C. §1231 (a) (6)**, the post-removal-period detention statute of the immigration and Nationality Act, implicitly limits an Alien's detention to a period reasonably necessary to bring about that alien's removal from the United States, which is presumably six months, and does not permit indefinite detention.

On January 22nd 2025, petitioner was picked up by the respondent (ICE agents) at Home Depot parking lot, and was told that his supervision released (which petitioner was on for over a year) is revoked, and it was told that it's because petitioner did not go into the office when asked to.

Respondents placed petitioner in Dodge County detention center, and told petitioner that if ICE does not remove him in the 90 days' removal period, his 90th day custody review will be on April 22nd 2025, and during the 90 days, "ICE will attempt to remove petitioner to China". Please see (Please Exhibit).

However, that's incorrect, Petitioner's removal period started in October 2005, and ended on January 2006, His reasonably 6-month clock ended in April 2006.

Furthermore, just because petitioner was on supervision release for over a year, it **does not** stop ICE's efforts to deport or remove petitioner from the country. Petitioner was just on supervision **until** ICE is able to obtain all the travel documents needed to remove him, Therefore, petitioner was on supervision **but his removal was never stopped nor suspended.**

Moreover, please see reporting history in (Exhibit). ICE has petitioner's home address on file, and petitioner was reporting monthly and yearly, and also was on GPS ankle monitor where ICE know petitioner's location 24/7.

Please see **Farez-Espinoza v. Chertoft**. 600 F. Supp. 2d 488, 499 (S.D.N.Y.200). The court held that the removal order became final the date it was issued. **Not** when she was taken into custody 15 month later. Id. At 499.

Under the removal statute, the removal period begins when an order of removal becomes administratively final. 8 U.S.C. §1231 (a)(1)(b).

Petitioner Liu's removal became final on March 12, 1997, and his 90 days removal clock started running in October 2005 after ICE picked him up when he completed his prison sentence. Likewise, any presumptively reasonably **SIX months extended** detention to which the Government may have been entitled expired in April 2006. *or Dec, 2023 in Sea, WAs.*

Please see **Peynado v. Bureau of Immigration and Custom Enforcement** No. 1:08-cv-2107, 2009 WL136749 at 3. 2009 U.S. Dist Lexis 3538, at ·6 (M.D.PA.Jan. 20, 2009) ("[T]he presumptively reasonable six-month period began running on June 27, 2008, the date the removal order became administratively final.") **Jackson v. Chertoff**, No. 08-1575 (SDW), 2008 WL2557516, at 3, 2008 U.S. Dist. Lexis 4803, at 10-11(D.N.J.June 23,2008); **Lamas v. Mckenzie**, No. 07-6035 (SDW), 2008 WL346138, at 8, 2008 U.S. Dist. Lexis 8647, at 832 (D.N.J. Feb.6, 2008) ("petitioner's 90-day period (as well as his six-month presumptive period under **Zadvydas**) began to run on that same day." **Diallo v. Pereira**, No. AW-07-348, 2007 WL5230798, at 3, 2007 U.S. Dist. Lexis 96020, at 9 (D. MDjune 29,2007).

Furthermore, in **"Farez-Espinoza" v. Cherfot.** 600F. Supp. 2d. (S.D.N.Y. 2009). The court reasoned that the petitioner's "address and whereabouts" were on file with DHS during the entire fifteen-month period, and that the respondents should not be permitted to benefit from their **failure** to "pursue removal.... Until more than 15 months after her order of removal was entered." Id. At 500. The court **rejected** the respondent's contention that the removal period was extended until the date petitioner was detained, because the petitioner had committed

no "affirmative misleading act that prevented her return, nor did she refuse to cooperate with the removal order" prior to her apprehension. Id. At 502.

In a similar stroke, respondent (**ICE**) has all of petitioner Liu's info on file, GPS monitor to know his whereabouts, Petitioner was reporting in person when ask to, Then **WHY** would ICE extend or suspend petitioner Liu's removal period until the date petitioner was detained again at Home Depot???

Moreover, for the past 19 years ICE has been actively trying to obtain travel documents for petitioner Liu but to no avail, Respondents cannot claim the removal period did not begin until petitioner was in custody again, because **ICE should have Petitioner's travel documents to China in hand the day they pick him up at Home Depot, because they have 19 years to do so, and if ICE does not have his travel documents in hand, then what were ICE doing during those 19 years?? And what can ICE do in 90 days that ICE can't do in 19 years??**

Please see **Ulysse v. Department of Homeland Security**, 291 F. Supp. 2d 1318 (M.D. Fla. 2003). The Court **rejecting** the government's argument that the removal period did not begin until the petitioner was taken into custody. Furthermore, the Uylsse court went on to review the removal stature under the **Chevron Doctrine**, which requires the court first to determine whether "congress has directly spoken to the precise question at issue." **Ulysse,** 291 F. Supp. 2D at 1325 (quoting **Chevron U.S.A. Inc. v. Natural resources Def. Council.** 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2D 694 (1984). Where the intent of congress is clear, "the court, as well as the agency, must give effect to the unambiguously expressed intent of congress." Id. (citing Chevron, 467 U.S. at 843. 104 S.Ct. 2778).

The Ulysse court then determined that congress had spoken to the issue **directly** in the removal statute and intended for inadmissible, excludable, or removable aliens to be deported within 90 days, if possible. Id. "This is evidenced not only by the clear language of the statute, but also by the change in statutory language in 1996….reduc[ing] the amount of time that the Attorney General has to deport an alien from six months to 90 days…." Id. (citing **Kai v. I.N.S.** 97 Civ. 0869 (DC). 1997 U.S. Dist. Lexis 20540, 1997 WL 786946, at 2 (S.D>N>Y>Dec, 22,1997).

Because the Ulysse court at (1325-26) found that the Government had provided no justification for its almost 17 months delay in detaining the petitioner and removing her from the United states, which is in contravention of the removal period, the court held that the **respondents** were **without statutory authority** to detain the petitioner and granted her Habeas petition Id. At 1326.

Petitioner Liu's case arises under circumstances very similar to those in Ulysse, Petitioner was ordered removed and final in 1997, ICE picked him up after he served his time on 2005, the removal period started in October 2005 as well as any presumptively reasonable six-month period of removal to which the Government may have been entitled, began on October 2005 and expired on January 2006 and April 2006. or Dec. 2023.

Petitioner Liu was granted supervised release, his address and whereabouts were all documented with ICE (please see his A File), ICE has shown no reason why it did not pursue removal of the petitioner.

Therefore, this court should not accept the Respondent's contention that it could arbitrarily trigger the removal period by its unilateral action of **CHOOSING** not to pursue

Petitioner Liu's removal until petitioner is in custody.

Petitioner Liu was/already in post removal period detention in Tacoma Washington, was released and granted supervision released, petitioner been free for over a year, started a business, did nothing wrong, but respondents detained him once again, and put him in post removal period detention again, and told him his 90 days review its on April 22nd, then **WHAT? GET RELEASE AND GET PICK UP AGAIN FOR NO REASON AND PUT ON POST REMOVAL PERIOD DETENTION AGAIN? OVER AND OVER,** SUCH ACTION ITS call arbitrary enforcement.

## The Constitution of the United States

### <u>Article One</u>

**Section one, All legislative power herein Granted shall be vested in a congress of The United States, which shall consist of A Senate and House of Representatives.**

**(Respondents do not belong to either of The branches who can enact laws)**

Respondents could arbitrarily trigger commencement of the removal period by simply waiting to take an alien into custody. This interpretation, however, flies in the face of the plain reading of the statute and 'congress intent that the removal of the alien, or at least a bona fide attempt to remove the alien, should be done within 90 days of the removal order being final....If Respondents are allowed the Liberty to decide when they will comply or even attempt compliance with the statutes that they are charged with enforcing, the statutory scheme will be rendered a nullity and congress' intent to remove illegal aliens as quickly possible will be thwarted. Federal Agencies should not and do not have such power. <u>600 F. Supp. 2D at 499-500</u>

To ignore and undermine the statutory congress had placed, **Respondents are enforcing their own laws as they see fits,** such practice constituted "Arbitrary Enforcement" is a substantive due process violation.

The guarantee of substantive due process secure petitioner Liu from this type **arbitrary exercise of power** of government. Please see **Daniels v. Williams** 474 U.S. 332. 106 S.Ct. 662. 665. 88 L. ED 2D 662 (1986). This **guarantee** protects petitioner Liu from government officials depriving his **LIBERTY** without Due Process of **Law.**

The doctrine of Due Process of law before the Civil War. **24 Harv L Rev** 366, 368 (1911), was "intended to secure the individual from the arbitrary exercise of powers of government." **Hurtado v. California** 110 U.S. 516, 527, 28 L.ED 232 (1884)(quoting **Bank of Columbia v. Okely** 4 Wheat 235, 244 L.ED 559 (1819).

See also **Wolf v. McDonnell** 418 U. S, 539, 558 41 L.ED 2d 935 94 S,Ct. 2963 (1974)('The touchstone of due process is protection of the individual against arbitrary action of government, **Dent v. West Virginia** 129 U.S. 114 123, 32 Led 623, 9 S.Ct. 231 (1889)".

By requiring the government to **follow appropriate procedures** when its agents decide to "deprive any person of life, liberty, or property." The Due Process Clause promotes fairness in such decisions. And by barring certain government action regardless of the fairness of the procedures used to implement them. **Rochin v. California** 342 U.S. 165, it serves to **prevent** governmental power from being **"used for purposes of oppression."** Murray's Lessee v. **Hoboken** 18 How 272, 277, 15 LED (1856) (discussing Due Process Clause of the Fifth Amendment).

Petitioner Liu is entitled to relief under Title 28 U.S.C. §2241, because his continued detention is the result of arbitrary exercise of power. And is Constitutionally impermissible.

## Ground Three

### Petitioner Liu are not subject to mandatory detention

**Castillo v. Field Office Dir.
907 F. Supp. 2D 1235
(W.D. Wash. 2012)**

In 2001 petitioner Castillo was ordered by an IJ to be removed for his 2001 firearm conviction. He was sentenced to 27 months of imprisonment and after he finished his sentence he was placed in ICE for removal to Belize.

On June 9th, 2011, Castillo was again convicted for other criminal offense and was sentenced to time served and 3 years supervised probation, 4 days later, on June 13th, 2011 Castillo was transferred to ICE custody for the removal order that was placed in 2001.

**The Castillo Court ruled:**

"Petitioner is **NOT** subject to mandatory detention under INA §236 © because the section only requires mandatory detention when the alien is released from incarceration on the **underlying offense...**" [ 1239]

"Petitioner is deportable because of his 2001 firearm conviction for which he was released in 2002, INA § 101 (a)(43)(E)(ii). 8 U.S.C. § 1101 (a)(43)(E)(ii), pursuant to INA § 236 (c) the Attorney General was therefore authorized in 2002 to take petitioner into mandatory detention", Because that was "When the alien [was] released "Id" [1239]

Therefore "…. Castillo is not subject to mandatory detention under §236 (c) because he was not placed in immigration detention "when released" from his underlying offense" [1240]

In a similar stroke, petitioner Liu is deportable because of his 1992 conviction for which Liu released from state prison in 2005, INA §101 (a)(43)(E)(ii) 8 U.S.C. §1101 (a)(43)(E)(ii) pursuant to INA §236(c) the attorney General was therefore authorized in 2005 to take petitioner Liu into mandatory detention, because that was **"when the alien [was] released'** Id, but not decades 20 years later.

Furthermore, petitioner Liu wrote/Fax to **ICE agent Mr. Christopher J. Wiet #4862, (please see Exhibit)**, petitioner Liu asked this agent for the reasons for revocation of his supervise release and reason of his detention on January 22nd 2025, **Mr.Wiet's** response was "you were issued a final order of removal (deportation) by an immigration judge…"

Well according to the statute, that "order" that Mr.Wiet mention would **only** subject petitioner Liu to be mandatory detained in **2005** after he was released from state prison.

The statutory language **does not** provide respondents a license to hold petitioner Liu in mandatory detention again, when he is apprehended more than 20 years after his released from the 1992 conviction in 2005. Petitioner's removal to China has already been determined as "Not Foreseeable" **three times, under "Zadvydas"** he was released on supervised release and at the moment he is not subject to mandatory detention under these **following cases:**

**Castillo v. Field office Dir.**
**907 F. Supp. 2D 1235 (W.D. Wash. 2012)**

**Quezada-Bucio v. Ridge**
**317 F. Supp. 2D 1221. 1228 (W.D. Wash. 2004)**

**Pastor-Camarena v. Smith.**
**977 F. Supp. 1415 (W.D. Wash. 1997)**

Continue to keep petitioner Liu in unauthorized detention, would be in violation of his rights, due process to seize his liberty cannot be carried out in those manner.

## Ground Four

## Statute No Longer Applies

In **Zadvydas v. Davis** 533 U.S. 678 at 699, it held "we conclude that, once removal is **no longer** reasonably foreseeable, continued detention is no longer authorized by statute. See **1 E. Coke, Institute 70b** ('cessante ratione legis cessat ipse lex') (the rationale of a legal rule no longer being applicable, that rule itself no longer applies)."

Petitioner Liu agrees with the supreme court, that as long as his removal is foreseeable, his detention does have a termination point, However, once **determined** that his removal is not foreseeable, then his detention becomes indefinite. Then the Attorney General no longer has the power and authority to detain petitioner Liu.

23  of  40

Yes, this determination can take up to 6 months, 7 months, or even 8 months, but vice versa, it can also only take 2 months, 1 months, or even one day, or one second to determine someone's removal is not foreseeable, **(but definitely doesn't take decades 20 years to determine some one's eligibilities).**

In petitioner Liu's case, it was already determined that his removal is not foreseeable in early 2006, and it has been that way for the past 20 years.

Therefore, Petitioner Liu's continued detention is no longer authorized by the INA Statute, it is constitutionally impermissible! Per Supreme Court case **Zadvydas v. Davis** 533 U.S. at 699.

## Ground Five

### Statutory Violation

Section §241 of the Immigration and Nationality Act permits the detention of an alien with a final order of removal for a period of 90 days, beyond the statutory period the Supreme Court has held that six months is a presumptively reasonable period of detention for the government to effect removal. **Zadvydas, 533 U.S. at 699-700**

**The 6-month presumption, of course Does not mean that every alien not Removed must be released after six Months. To the contrary an alien may Be held in confinement until it has Been (<u>determined</u>) that there is no significant likelihood of removal in the reasonably foreseeable future. Id. (emphasis added)**

24 of 40

In petitioner's case, it **has** already been **determined** when the Chinese Consulate (PRC) in Chicago faxed a letter to ICE agent in charge at the time **Mr. John Schultz** of ICE's HQPDU in Washington D.C. denying ICE's request for petitioner's travel documents. (See ICE's A file).

Please also see **Zhou v. Ashcroft**, Civ. No. Cv-01-0863 (M.D.PA. April 15,2002). And **Shefget v. Ashcroft** No. oz C7737, 2003 WL 1964290, 4(N.D. ILL, April 28, 2003). In both these cases, aliens were both released under "Zydvydas", after Consulates of their country of origin had **notified INS by letter** that they wouldn't accept their removal.

Furthermore, in **"Zadvydas"** the court held, "in our view, the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States, it **does not** permit indefinite detention." 533 U.S. 690.

In **Akinwale v. Ashcroft**, 287 F. 3D 1050, 1052 (11th Cir. 2002) (petitioner must "present any facts indicating that the INS is incapable of executing his removal to Nigeria and that his detention will therefore, be of an indefinite nature.") Well in petitioner Liu's case, his final order of removal became final in 1997, and it's now 2025, **28 years later** and he is still here. Therefor there is no reason to believe that ICE is capable to executing the order of removal.

Furthermore, petitioner is a native national of China, a country that ICE is able to remove Aliens, the government of China has issued countless travel documents for deportation to countless Chinese nationals that's illegal migrants that came here to United states illegally, Petitioner Liu, was brought here as a minor with his family, because he was a minor he does not have a passport, him his brother, and his Father came under one single passport, since then his father had become a US citizen, and he passed away in 2017, petitioner was born in 1974, back

then Computer does not exist in China, he doesn't have a birth certificate on record, Petitioner been in this country 37 years, he has no friends nor families in China, he barely understand some but not all Chinese, he can't not hold a conversation in his native tongue, he married a Spanish girl, born two beautiful daughters, they also speak English only.

ICE agent has been working diligently to try to effectuate petitioner's removal to China, but for the past **28 years**, the Chinese Consulate General has been denying ICE's request for petitioner's travel document, So how much more time does ICE need??? **Another 28 years???** If ICE is not capable to remove petitioner, but still holding him, then petitioner's detention became indefinite.

Moreover, please see **Idowu v. Ridge**. 2003WL21805198, at 4 (N.D. Tex. Aug. 4 2003) (Citing **Fahim v. Ashcroft,** 227 F.Supp. 2d 1359, 1366 (N.D. Ga. 2002). In order to **shift the burden** to the Government, an alien's claim must be supported by more than mere "speculation and conjecture" an alien must demonstrate that "the circumstance of his status" or the existence of "particular barriers to his repatriation" to his country of origin are such that there is no significant likelihood or removal in the reasonably foreseeable future. Id. Also see (**Akinwale,** 287F,3d at 1051). Where the alien fails to come forward with an initial offer of proof, the petitions ripe for dismissal. But in Petitioner Liu's case, it is not "speculation" nor "conjecture", the initial letter to ICE agent in charge from China's Embassy which is petitioner's country of origin stating that they won't accept petitioner's deportation. (please see ICE A file) that's more than enough to satisfy both "Idowu" and "akinwale" requirement to prove that petitioner's detention be of indefinite nature.

Per INA, the Attorney General is authorized to detain an alien **only** for a period reasonably

Necessary to secure the removal, But not indefinite.

The substantive due process requirement of the Fifth Amendment prohibits the

Government from subjecting persons to preventative detention for potentially indefinite

period. See **United States v. Salerno**. 481 U.S. 739. 746. (1987)

Petitioner has been in this country for the past 37 years, there is no reason to believe that

ICE is capable of executing his order of removal to China.

Petitioner's 90 days' statutory removal period and six month presumptuously reasonable

period for continued removal efforts have both long passed and ended in early 2006.

The United States Supreme Court held in **Zadvydas.** "We conclude that once removal is no

longer reasonably foreseeable, continued detention is no longer authorized by the statute."

**Zadvydas v. Davis** 533 U.S. 678 at 699 (2001)

Therefore, petitioner Liu's detention is <u>unlawful</u> and is not authorized by the statute,

continuing to hold him in detention is a statutory violation, which is Constitutionally

impermissible!

## Ground Six

It has been 28 years since the Final Order of removal
In order to justify continued detention
Respondents have to come forth with evidence
To indicate petitioner's removal are foreseeable
But cannot come up with any

In **Okilagwe v. INS,** No. 3-01-CV-1416-BD. 2002 WL 35678, 3 (N.D.Tex.Mar. 1 2002) (Alien from Nigeria in custody for 11 months ordered released under **Zavydas**, because INS did not have trave travel document in hand and there was no certainty as to when such document might be issued).

Please also see **Sere-Khama v. Ashcroft**, 215 F.Supp. @D 37, 53 (D.C 2002) (finding that Respondents failed to meet their **burden of proof** under "Zadvydas" where ICE "have not demonstrated to the court that any travel documents are in hand, nor have they provided any evidence, or documents assurance from the Liberian Government, that travel documents will be issued in a matter of days or weeks or even months")

See also **Shefget v. Ashcroft**, No. 02c 7737, 2003 WL1964290. 4 (N.D ILL April 28, 2003) (ordering release of Yugoslavian under Zadvydas after Yugoslavian Embassy notified INS that it would not issue a travel document to the alien).

Moreover, in a very similar stroke, a Fax/letter from the Consulate General of the People's Republic of China in Chicago dated August 9th, 2006 (It's in ICE's A file), informed ICE officer in charged at that time Mr. John Schultz on Fax number (202) 732-2980 that he has no ground to favor petitioner Liu's deportation to China. (see ICE's A File).

Petitioner Liu's last post removal detention period was in Northwest ICE processing Center at Tacoma Washington, it ended in 2023, petitioner Liu was released on Supervised release because ICE determined that his removal is not foreseeable, petitioner was on supervised release over a year, his status is that he is a legal resident of the United States, until ICE is able to obtain travel documents for his departure to China.

Therefore, in order for ICE to justify their action of why they are picking up Petitioner Liu at the Home Depot parking lot and once again place him in 90 days of post removal detention, due process of Law would command the respondents to produce evidence to show that petitioner's removal is foreseeable, however as of today, Respondents cannot produce any. Due process to seize liberty cannot be satisfied in that manner.

Petitioner Liu is entitled to relief under Title 28 U.S.C. §2241, because his detention is Constitutionally impermissible.


## Ground Seven

### Detention in violation of INA and Interim Regulations 66 Fed. Reg. 56967 (Nov.14, 2001)

In response to Supreme Court's decision in **Zadvydas**, the INS issued the Interim regulations regarding continued detention of aliens subject to final orders of removal. See **66 Fed. Reg. 56967 (Nov. 14, 2001)**. The interim Regulations now govern BICE's determination whether there is a "significant likelihood that an alien will be removed from the United States in the reasonably foreseeable future, and whether there are special circumstances justifying the continued detention of certain aliens." Id. At 56967.

Under the interim regulations, if an alien for whom the removal period has expired without removal from the united states, and there is "no Signiant likelihood that the alien will be removed in the reasonably foreseeable future to the country which the alien was ordered removed" 8 C.F.R.§241.13 (d)(1).

The HQPDU must consider all the facts of the case including, inter alia, the history of the alien's efforts to comply with the removal order, the history of BICE's efforts to remove aliens to the country in question, and the reasonably foreseeable results of BICE's ongoing efforts. 8 C.F.R.§241.13(f).

And if the HQPDU determines that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future, and no special circumstances justify continued detention, BICE shall promptly make arrangements for release of the alien subject to appropriate conditions. 8 C.F.R. §241.13(g)(1).

## Special circumstances justifying continued detention are:

A) If the alien has a highly contagious disease that is threat to public safety;

B) If his release would have serious adverse foreign policy consequences;

C) If there are security or terrorism concerns; and

D) If release would pose a special danger to the public. 8 C.F.R.§241.14(b)-(d). (f)

# There're no special circumstances exist to justify
# Petitioner Liu's continued detention

A) Petitioner Liu is not an alien with a "highly contagious disease posing a danger to the

   Public." 8 C.F.R.§241.14(b).

B) Petitioner Liu's release would not cause "serious adverse foreign policy

   Consequences." 8 C.F.R.§241.14(c)(1). While relations between China and the United

   States are marked by some tension and disagreement; the countries do have many close

   Ties, see http://www.state.state.gov/r/pa/ei/bgn/18902.htm. There is no indication that

   Petitioner Liu's release would have any foreign policy consequences, let alone "serious

   Adverse" consequences.

C) Petitioner Liu was not and is not now detained on account of security of terrorism

   Concerns. 8 C.F.R.§241.14(d)(1).

D) Petitioner Liu were already on supervised release over a year, he did not committed a

   Crime of violence as defined in 18 U.S.C.§16 as would classify him as "special dangerous"

   Under the interim regulations, 8 C.F.R. §241.14(f)(i), and his release therefore would not

   Pose a special danger to the public. 8 C.F.R.§241.14(f). (furthermore, if he is a danger to the

   Public, he would be already committed crimes that's defined in 8 U.S.C.S.§1101(a) (43) and

   18 U.S.C.§16, while he was on supervised released.) but he didn't!

Because there is no significant likelihood of petitioner's removal in the reasonably foreseeable future, and because none of the special circumstances exist here to justify Petitioner Liu's detention, continue to detain him would be in violation of INA and the Interim Regulations, which is constitutional impermissible.

## Ground Eight

## Petitioner is not a Flight Risk

Petitioner entered United States with inspection on Dec.12th 1988, he became a lawful permanent resident in 1989, he has strong family ties in the U.S.

Furthermore, Petitioner was classify as not a flight risk, he was first put on supervised released in 2006, was required to reported in person on his own account, he been faithfully going to all his scheduled appointments ( see Exhibit )

Petitioner Liu has no histories of any escapes!

Moreover, The United States Supreme Court held that "Where removal is, at most, a remote possibility, prevention of flight is a weak or non-existent justification for continued detention." **Zadvydas, 533 U.S. at 690.**

## **Ground Nine**

## **Public Interest**

When as here, "the impact of an injunction reaches beyond the parties carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction," **Stormans, Inc. v. Selecky,** 586 F.3d 1109, 1139 (9th Cir. 2009).

Petitioners must demonstrate that the public interest favors granting the injunction "in light of [its] likely consequences." I.e, "consequences [that are not] too remote, insubstantial, or speculative and [are] supported by evidence." Id.

The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of a likely UNCONSTITUTIONAL PROCESS.

1) **First**, and most important, the injunction serves the interests of the general public by ensuring that the Government's procedures comply with the constitution. "Generally public concerns are implicated when a constitutional has been violated, because all citizens have a stake in upholding the constitution." **Preminger v. Principi,** 422 F.3d 815,826 (9th Cir. 2005)

2) **Second,** in addition to the hardships petitioners are facing in the absence of the injunction, this court "may consider... the indirect hardship to the friends and family members." **Golden Gate Rest. Ass'n v. City & City of San Francisco** 512 F,3d 1112, 1126 (9th Cir 2008)

Without order from this court, it will place financial and psychological strain on the families of the petitioner, without financial help from the petitioner, the mother of his children have scraping money to pay for necessities such as Mortgage, Utilities, and food to support the children all on her own, and Without help, his Widowed 72 years' old Mother still have to work grave yard shift to support herself, ( petitioner was paying the light, gas, and all the utilities around the house ), and petitioner's children are still recovering from the truma of separation from their father.

To whom it may concern

My name is Jailene Hernandez, I am writing in regards to my step father sunny, I was only 5 years old when I met sunny, I am going to be 21 soon, He took me to school, made sure I ate, he did my hair, he even signed me up for acting classes he said I had a talent at a young age, I never had a relationship with my real father, after my mother left him for not being responsible, my step dad would drive me to my grandparents home where my real father stayed so I can spend time with them and get to no my real father, he would drop me off and pick me up because my real father always had excuses and until this day nothing has changed with my real father, no calls, no visits, he has 2 other children with 2 different mothers, however sunny calls me, writes me, checks up on me a lot, I got my dental assistant certificate, I am currently working at Walmart as a pharmacy tech and proud of my accomplishment and no kids, my step dad always told me education first everything else can come later, he also signed me up for boxing classes to stay active which I did finish also, Thank you so much we really miss his kind energy around the house.

sincerely Jailene Hernandez /



34  of 40

To whom this may concern.

Hi my name is Jaleah star Liu and i'm the youngest, I am 11 years old I was born on christmas day, I really don't enjoy having it on christmas because It does not feel special but my mom makes sure to separate birthday and christmas presents, ok I really do miss my dad, I remember having so much fun with him, he took us to day care, to after school sports helped us to learn self defense and discipline, he took us to the daddy daughter dance it was fun, we danced with our friends, he always made sure we were doing our school work and staying active at the same time, I really do miss my dad and i want him to come back and i also miss him making us work out and do push ups in our room and taking us to tournaments with the whole family. Thank You

Jaleah Star Liu




35   of   40

To whom this may concern

My name is Janelle Liu, and I am the middle child. I am 12 years old and I am writing to you about my father.I haven't seen my father in almost 4 years and I miss him alot.He is an amazing father, he took us to daycare everyday, he fed us delicious food, always made sure we were okay, drove us to sports that he encouraged us to join before he left us he made us sign up for karate and boxing, always supporting us, my mom continued taking us while working full time, me and my sister are second dan black belts, my mom couldn't continue to take us to both so we ended up staying at tae kwan doe, we ended up helping the master and became junior instructors, my mom has been taking care of me and my sisters by herself, she is an independent woman and does everything for us, me my mom,my sisters and my family miss and want to see him badly, he's an amazing father,son and friend, we have lost 4 very important years of our childhood without a father and we really hope we can make up for it soon,because we love and miss him so much thank you for taking the time to read this.

Janelle Star Liu




To whom It may concern
My name is Erwin Berryman, I am founder of Bully Pedex one of the the largest dog registries for Bully breed dogs in the USA.
I am writing in regards to my friend Wing Liu. We share the same passion for dogs and thats how we actually became friends. Wing Liu is great with dogs and brings his passion together with his kids and family as well.
I have had the honor of knowing Wing Liu for several years and I couldn't be more unhappy about the fact he is not with his family where I know he should be. I ask that God put it on your shoulder to grant mercy on behalf of Wing Lui and permit him to be home with his wife and kids. Life is so short especially with this pandemic situation. I only know the Good in Wing Liu and im absolutely positive that Wing Liu has changed his life after whatever situation caused him to be in his current position. I ask that your honor please find it in your Soul to grant freedom to Wing Liu.

Erwin Berryman Account Manager Service Pros Office/Fax 404-920-8555

37   of   40

**3) Third,** the general public's interest in the efficient allocation of the government's fiscal resources also favors granting the injunction. See **Golden Gate Rest. Ass'n v. City & City of San Francisco** 512 F.3d at 1125 (9th Cir. 2008). The costs to the public of immigration are $158 each day per detainee amounting a total daily cost of $6.5 million dollars, supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person. Reduced detention costs can free up resources to more effectively process claims in immigration courts.

Therefore, the interest of the general public would be served by granting petitioner Liu preliminary injunction.


## CONCLUSION


All courts in the US had sworn under oaths to uphold and enforce the Constitution of the United States. Habeas is a challenge to unlawful custody and when the writ issues, it prevents further illegal custody. See **Preiser v. Rodriguez**. 411 U. S 475, 489, 494, 36 L.ED 2d 439, 93 S.Ct 1827.

Petitioner Liu is now before this honorable court seeking justice in the form of this Habeas Corpus Petition and pleading what's **guaranteed and promised** to him by the Constitution of the United States which is prohibit the government from seizing his liberty without due process of Law.

"To no one will we sell,
to no one will we refuse
or delay, right or Justice."
(Articles 40-Magna Carta (1215))

A day, a minute, or even a second ["delay of liberty"] is too long to deprive someone's liberty without due process.

If without intervention from this court, Petitioner is subjecting to further suffer of losing his liberty to the "arbitrary enforcement" from the respondents.

Such enforcement is Constitutionally impermissible, Petitioner prays and plead that this court grants him his freedom immediately from unconstitutional detention. So he can be reunited with his families.



## Petitioner Also Prays For The Following Relief
## From this Honorable Court:

1) Assume Jurisdiction over this matter;

2) Enter preliminary and permanent injunctive relief enjoining Respondents from
   Further unlawful detention of Petitioner;

3) Declaring that Petitioner's continued detention is not authorized by the INA and
   Violates the Fifth Amendment;

4) Unless Petitioner is being deported back to his country of origin, this Court should order the
   Respondents to refrain from transferring him out of the jurisdiction of this court or the
   Jurisdiction from the Chicago ICE field office during the pendency of these proceedings and
   While he is remaining in the respondent's custody;

5) If this Court granted petitioner's Habeas Corpus petition, this court should also issue an order
   To the respondents that the Respondents cannot pick up petitioner again, unless they have
   Petitioner's travel documents in hand, or Petitioner willfully violated his term of supervise
   Release orders.

6) Grant any other and further relief that this Court deems just and proper.

Date _2. 23. 25_

*Respectfully Submitted!*

Petitioner: Wing Nuen Liu
Alien Number 040-303-727
Jail ID # ~~052826~~ 52147-424
~~Dodge County Detention facility~~      Leaven Worth F.C.I.
~~1100 W. Center St.~~                    P.O. Box 1000
~~Juneau, Wisconsin, 53039~~             Leaven Worth, KS. 66048

40  of 40

# Certificate of Service

I, Wing Nuen Liu, Certify that on                    ,
I deposited (1) copy of the attached petition in the
Leaven Worth. F.C.I. inmate's Legal mail System,
Certified mail usps postage prepaid, Because
petitioner do not hare Copy machine, Nor type
writer avilable to him, therefore, only one
copy was able to Send insted of the required
(3) by Court Rule. petitioner pleding
for the Clerk of court to make copies
and distribute to the following:

1) U.S. District Court Judge
2) U.S. Attorney
3) Clerk of Court.

Respectfully Submitted

Petitioner Wing Liu
I.D. 52147-424
Leaven Worth. F.C.I.
P.O. Box 1000
Leaven worth, K.S, 66048

Date Feb. 23. 2025