IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WING NUEN LIU,                              )
                                            )
                    Petitioner,             )
                                            )
       v.                                   )    Case No. 25-3036-JWL
                                            )
C. CARTER, Warden, FCI-Leavenworth, et al., )
                                            )
                    Respondents.            )
                                            )
_____)

# **MEMORANDUM AND ORDER**

Petitioner has filed a *pro se* petition for habeas corpus under 28 U.S.C. § 2241, in which he challenges his detention by immigration officials.  For the reasons set forth below, the Court **grants** the petition, and respondents are ordered to effect the release of petitioner, subject to his previous Order of Supervision, by **June 27, 2025**.

Petitioner is a native and citizen of the People's Republic of China who entered the United States in 1988 as a lawful permanent resident.  In 1994, petitioner was convicted of murder in Illinois state court.  In 1996, an immigration judge ordered petitioner's removal from the United States, and that removal order became final when petitioner's appeal was dismissed in 1997.  In 2005, United States Immigration and Customs Enforcement (ICE) officials took custody of petitioner from Illinois authorities; but in August 2006, after it failed to obtain travel documents for petitioner, ICE released petitioner from custody under an Order of Supervision (OSUP).  In May 2010, petitioner was convicted of a firearm offense in Illinois state court, and in 2011 ICE again took custody of petitioner from Illinois

officials. ICE was again unable to obtain the necessary travel documents, and in February 2012 petitioner was therefore released under another OSUP. In 2022, petitioner was convicted in federal court in Illinois of a drug offense. In 2023, ICE took custody of petitioner, but yet again it failed to obtain the necessary travel documents, and in December 2023 petitioner was released under another OSUP.

On January 22, 2025, ICE took petitioner into custody pursuant to an administrative arrest warrant, and he is presently detained at FCI-Leavenworth within this judicial district. On March 3, 2025, petitioner filed the instant habeas action, in which he challenges his detention. Respondents filed an answer to the petition, and petitioner filed a reply brief.

By Memorandum and Order of April 25, 2025, the Court denied petitioner's claim that he had been detained too long without removal, as the six-month presumptively-reasonable period sanctioned by the Supreme Court had not yet expired (and still has not expired). *See Liu v. Carter*, 2025 WL 1207089, at *1-2 (D. Kan. Apr. 25, 2025) (Lungstrum, J.). The Court retained under advisement, however, petitioner's claim that the latest revocation of his release did not comport with applicable regulations, in particular 8 C.F.R. § 241.13. *See id.* at *3. The Court noted that respondents had not addressed the applicability of or compliance with that regulation and had not identified the basis for any revocation of release, and the Court ordered additional briefing. *See id.*

The Court addressed the parties' supplemental briefs in its Order of May 29, 2025. The Court began by noting that respondents did not dispute that Section 241.13 applied here and that compliance with its provisions is required. Respondents argued that revocation of petitioner's prior release was indeed justified by "changed circumstances" as

2

required by Section 241.13(i), namely "an increase in successful repatriations to the People's Republic of China in 2024;" but the Court found that explanation insufficient, as follows:

> The Court cannot yet decide, however, whether any changed circumstances led officials to determine that there is a significant likelihood that petitioner may be removed in the reasonably foreseeable future, as required by Section 241.13(i).  As petitioner notes, he has been released on multiple occasions in the past because officials could not obtain the necessary travel documentation for him from China, presumably because of a missing birth certificate; and the fact that officials have successfully removed others to China recently does not necessarily bear on the likelihood of obtaining travel documentation for petitioner, absent some evidence specific to petitioner's case or at least evidence concerning the obstacles to removal that have been overcome recently concerning those aliens on the recent repatriation flights.  For example, respondents have not yet provided evidence that officials had had more success recently obtaining travel documents.  Petitioner notes also that although respondents state in their supplemental brief that on May 2 a travel document packet was submitted to an ICE office in an effort to obtain the necessary travel document, respondents' prior declaration (Doc. # 7-1) states that a travel document request was sent to the Chinese Consulate on January 28, 2025 – and petitioner argues that that earlier request must have already been rejected.
>
> In addition, it does not appear that all information concerning petitioner's detention in January 2025 has been submitted.  Petitioner has alleged that he was originally detained because of officials' mistaken belief that he had violated a term of his release, and respondents have not relied on any such violation to support revocation of his release.  Respondents have not provided any information concerning the basis for the administrative warrant that authorized his detention in January, however, and such information would be relevant to the basis for the revocation of release.  For instance, Section 241.13(i) requires officials to notify an alien of the supporting reasons upon revocation of release and to conduct an informal interview promptly after return to custody.  *See* 8 C.F.R. § 241.13(i)(3). Respondents have not provided a copy of that notice given to respondent; nor have they yet provided evidence that petitioner was given the required interview (petitioner alleges that no such interview took place).

The Court then gave respondents an additional opportunity to supplement their briefing. Both sides have now filed briefs, and the matter is ripe for ruling.

> Section 241.13 allows for a revocation of release as follows:
>
> The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in section (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

*See* 8 C.F.R. § 241.13(i)(2). The regulation also requires officials to notify an alien of the supporting reasons upon revocation of release and to conduct an informal interview promptly after return to custody. *See* 8 C.F.R. § 241.13(i)(3). As noted, respondents do not dispute that this regulation applies in this case; nor do they argue that compliance with this regulation is not required or that its violation cannot justify overturning a revocation of release.

The Court finds that officials did not properly revoke petitioner's release pursuant to Section 241.13, for multiple reasons. First, and most obviously, the Court finds that petitioner was not granted the required interview upon the revocation of his release. Petitioner has stated that he was not granted any such interview. Respondents state that petitioner was given the required written notice upon revocation, but they further state that "[i]t is not known" whether petitioner was given the required interview, and thus respondents do not controvert petitioner's claim.

Second, the Court finds that there were no changed circumstances that could have led officials to determine that there was a significant likelihood that petitioner would be

4

removed in the reasonably foreseeable future, as required by law to justify a revocation of release.  In their first supplemental brief, respondents cited an increase in removals to China as the necessary "changed circumstances," but the Court then noted that such a bare assertion of an increase did not make petitioner's removal any more likely without addressing the particular obstacles to the many past failed attempts to remove him, namely the lack of proper documentation for petitioner.  Respondents now state than in 2025 officials began submitting requests to travel documents to the Chinese Embassy instead of to Chinese consulates.  Respondents have not shown that that change has had any real effect, however – respondents' declarant states only that it is her "understanding and belief" that this change has resulted in obtaining more travel documents, but she does not cite the basis for that belief or provide any details or statistics to support that belief (her citing a single example of documentation being received in March from the Chinese Embassy for one Chinese alien is hardly persuasive).  In addition, as petitioner points out in his supplemental brief (with the graphic 5>1), that belief is undermined by the fact that although respondents relied on five repatriation flights to China occurring in the seven months leading up to early January 2025, they now are able to cite only a single flight that has taken place in the five months since.[1]

Moreover, respondents have again failed to discuss the particular documentation needed for petitioner – indeed, respondents have not provided any details about why that documentation could not be obtained in the past, nor have they attempted to show why

---

[1] Respondents' declarant states that she is "aware" of other recent flights, but she provides no details or statistics to support that claim.

obtaining that particular documentation is more likely this time around. Furthermore, the fact that officials did not even request documentation for petitioner from the Chinese authorities until May (and did not get that request corrected until June) undercuts any suggestion that petitioner's release was in fact revoked in January because the likelihood of obtaining that documentation had increased to any material degree. Finally, although the Court specifically noted in its prior order that respondents had not provided information concerning the basis for the administrative warrant that authorized petitioner's detention, and that such information would be relevant to this inquiry, respondents have again failed to provide any documentation or evidence (or to offer any statement or argument in their supplemental brief) concerning the decision to issue that warrant.

Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release). The Court therefore grants the petition, and respondents are ordered to effect petitioner's release by **June 27, 2025**.

IT IS THEREFFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**, and respondents are ordered to effect petitioner's release by **June 27, 2025**.

IT IS SO ORDERED.

Dated this 17th day of June, 2025, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge